# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **APRIYL WHATLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 2:11-CV-00067-MHH** |
| | } | |
| **ROBIN KING and LAURA PARCHMAN,** | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Apriyl Whatley was sexually abused by Larry Chapman, a man who the State of Alabama selected to provide in-home counseling to her. Ms. Whatley sued Mr. Chapman, his company, and the Alabama Depart of Human Resources, the state agency that authorized Mr. Chapman to provide counseling. The other defendants in this case, Laura Chambliss[1] and Robin King, are current or former state employees who vetted Mr. Chapman to provide in-home counseling services on behalf of the Department of Human Resources. Ms. Whatley asserts claims against Ms. Chambliss and Ms. King under 42 U.S.C. § 1983 and Alabama tort law. (Doc. 83).

---

[1] When Ms. Whatley named DHR employees as defendants, Ms. Chambliss went by the name Laura Parchman. (Doc. 102-1, p. 11). Ms. Chambliss now uses her maiden name.

Before the Court are cross-motions for summary judgment. Ms. Chambliss and Ms. King ask the Court to enter judgment in their favor on Ms. Whatley's claims. (Docs. 101, 103). Ms. Whatley asks for partial summary judgment on Ms. Chambliss's and Ms. King's defenses of qualified and state-agent immunity. (Doc. 107). This opinion resolves these motions.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). When considering a summary judgment motion, the Court must view the evidence in the record and draw reasonable inferences in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc*., 789 F.3d 1188, 1191 (11th Cir. 2015). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Because the Court resolves the claims against Ms. Chambliss and Ms.

King on their summary judgment motions, the Court presents the facts in the light most favorable to Ms. Whatley.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2005, on behalf of his company, Chapman & White, Larry Chapman submitted an "agency application" to Jefferson County DHR, a local branch of the Alabama DHR. (Doc. 105-2, p. 7). In his application, Mr. Chapman represented that Chapman & White could provide a variety of counseling services on behalf of DHR. (Doc. 105-2, p. 29). In support of the application, Mr. Chapman included his credentials and the credentials of his wife, Nyshetia White, who was the only other counselor associated with the company. (Doc. 105-2, p. 7). As employees of Jefferson County DHR, Ms. Chambliss and Ms. King evaluated Mr. Chapman's application. (Doc. 102-1, pp. 21–20, 31; Doc. 105-2, p. 7). At the time, Ms. King was a "Resource Development Social Worker," and Ms. Chambliss was the supervisor of JCDHR's resource development program. (Doc. 102-1, p. 15; Doc. 105-2, p. 4).

In his application, Mr. Chapman certified that both he and his wife met the Medicaid guidelines for rendering rehabilitative services. (Doc. 105-2, p. 28). Per state policy, JCDHR resource officers Chambliss and King could approve an individual to provide counseling only if the individual met the minimum

qualifications set forth in the Alabama Medicaid Provider Manual. (Doc. 102-1, p. 39; Doc. 105-2, p. 9). The Medicaid Provider Manual required individuals seeking approval to submit at least one of the following credentials to meet the minimum qualifications: a psychologist's license, a professional counselor's license, a social worker's license, a physician's license, a nurse's license with a master's degree in psychiatric nursing (MSN, Psychiatric), or documentation showing that the applicant completed a qualifying master's program and had six months of clinical experience. (Doc. 105-4, p. 17; Doc. 108-3, pp. 41–42). All of the qualifying licenses had to be issued by the State of Alabama.

Ms. White met the minimum qualifications because she was licensed by the State of Alabama as a social worker. (Doc. 105-2, pp. 43–44). Mr. Chapman submitted documentation indicating that he was a "licensed Christian Counselor" and a licensed domestic violence counselor. (Doc. 105-2, pp. 40–41). Mr. Chapman also submitted records that indicated that he had earned a master's degree in "Christian Counseling Psychology" from Carolina University of Theology. (Doc. 105-2, pp. 35–36; Doc. 108-5, p. 9). Although Mr. Chapman had a background in counseling, none of his application materials qualified him as a licensed professional counselor because he was not licensed by the State of Alabama as required by the Medicaid Provider Manual, and he did not have a

master's degree from a university with an accredited program in a relevant discipline. (Doc. 105-2, pp. 11 - 12).

Both Ms. Chambliss and Ms. King saw the service provider application from Chapman & White, but they dispute who was responsible for verifying that both of the counselors associated with Chapman & White met the minimum Medicaid Standards. (Doc. 102-1, p. 27; Doc. 105-2, p. 7). An internal memo sent from Ms. King to other JCDHR employees including Ms. Chambliss indicated Ms. King's understanding that Mr. Chapman qualified as a "licensed professional counselor." (Doc. 105-2, p. 61). Both Ms. Chambliss and Ms. King now concede that Mr. Chapman did not meet the Medicaid minimum qualifications. (Doc. 102-1, p. 21; Doc. 105-2, p. 11). Nonetheless, DHR entered into a vendor agreement with Chapman & White and listed the company as an authorized provider of counseling services. (Doc. 105-2, pp. 24, 61).

Apriyl Whatley first came into contact with the JCDHR late in 2009 after she filed a petition in county court seeking protection from the father of her child. (Doc. 105-1, pp. 4–6). The county court instructed JCDHR, "to investigate the safety and welfare of [Ms. Whatley's] child." (Doc. 105-1, pp. 44, 48). Monique Lewis, a DHR social worker, began to work with Ms. Whatley shortly after Ms. Whatley filed her petition for protection. (Doc. 105-1, pp. 8, 14). Ms. Lewis, in consultation with a doctor who conducted a psychological evaluation of Ms.

Whatley, developed an individualized service plan which stated that Ms. Whatley must participate in counseling. (Doc. 105-1, p. 53). DHR remained involved with Ms. Whatley and her child after the Department of Education reported Ms. Whatley for truancy. (Doc. 105-1, pp. 10, 65). The service plan resulting from the truancy report contained a renewed recommendation that Ms. Whatley undergo counseling. (Doc. 105-1, pp. 66, 71).

In May of 2010, Ms. Whatley began receiving in-home counseling from Mr. Chapman. (Doc. 105-1, p. 24; Doc. 110-4, p. 27). Ms. Whatley told Ms. Lewis that her initial in-home counseling session with Mr. Chapman went well. (Doc. 105-1, p. 16). Not long after, the counseling arrangement deteriorated. Mr. Chapman began questioning Ms. Whatley about her sexual proclivities. (Doc. 105-1, p. 24). Mr. Chapman even asked Ms. Whatley what she thought about having sexual relations with him. (Doc. 83, ¶ 14). By the third counseling session, Mr. Chapman became physically abusive, forcing Ms. Whatley to kiss him and perform oral sex on him. (Doc. 105-1, pp. 26–27). Mr. Chapman threatened Ms. Whatley with the loss of her child if she did not comply with his demands. (Doc. 83, ¶ 15; Doc. 105-1, p. 24).

Initially, Ms. Whatley did not tell Ms. Lewis about Mr. Chapman's behavior. Ms. Whatley called Ms. Lewis before Mr. Chapman's visits in the hope that Ms. Lewis would attend the "counseling" session "[t]o prevent any further

interaction from [Mr. Chapman] negatively." (Doc. 105-1, p. 17). Ms. Whatley did not discuss the abuse with Ms. Lewis over the phone. (Doc. 105-1, p. 17).

Ms. Whatley made DHR aware of Mr. Chapman's misconduct on July 13, 2010. (Doc. 105-1, p. 18; Doc. 110-4, p. 32). Ms. Whatley reported Mr. Chapman to local law enforcement. By this time, Anita Scott-Smith had replaced Ms. Chambliss as Ms. King's supervisor within the JCDHR resource department. (Doc. 105-2, p. 4). Ms. King states that her supervisor, Ms. Scott-Smith, made her aware of the allegations and asked her to examine the credentials on file for Mr. Chapman. (Doc. 105-2, p. 12). When Ms. King reviewed Mr. Chapman's qualifications, she determined that he did not qualify under the Medicaid guidelines. (Doc. 105-2, p. 12). After learning of Ms. Whatley's allegations, DHR removed Mr. Chapman from the approved provider list. (Doc. 105-2, p. 12).

In her first amended complaint, Ms. Whatley named Mr. Chapman, Chapman & White Family Wellness, and DHR as defendants. The Court stayed this case for nearly a year while state criminal charges were pending against Mr. Chapman. (Docs. 16, 19). In the interim, the Court dismissed DHR as a defendant. (Doc. 18).

When activity in this case resumed, Ms. Whatley filed two amended complaints in which she added as defendants Ms. Chambliss; Ms. King; and social

workers Yolanda Mathews, Ingrid Honeycutt, and Monique Lewis.  (Docs. 37, 83).

Ms. Whatley stipulated to the dismissal of Mr. Chapman, Chapman & White

Family Wellness, Ms. Matthews, Ms. Honeycutt, and Ms. Lewis as defendants.

(Docs. 47, 99).  Only Ms. Whatley's claims against Ms. King and Ms. Chambliss

remain pending.

## III. DISCUSSION

### a.  Ms. Whatley's Section 1983 Claims

Ms. Whatley contends that defendants Chambliss and King were

deliberately indifferent to her wellbeing in violation of the Eighth Amendment

because these defendants did not adhere to the "rigid minimum qualifications" for

certifying an individual as an approved DHR counselor.  (Doc. 110, p. 39).  As a

result, these defendants approved an unqualified counselor who sexually abused

her.  Ms. Whatley also contends that the defendants violated her Fourteenth

Amendment right to privacy when they authorized Mr. Chapman to perform in-

home counseling because Mr. Chapman used this authority to sexually assault her.[2]

Section 1983 provides in relevant part that:

---

[2] Ms. Chambliss and Ms. King argue that Ms. Whatley's claims against them are untimely
because Ms. Whatley did not name them as defendants until after the two-year statute of
limitations had run on her § 1983 claims.  Ms. Chambliss and Ms. King also contend that they
are entitled to qualified immunity from Ms. Whatley's § 1983 claims.  The record before the
Court indicates more fundamental defects in Ms. Whatley's § 1983 claims, so the Court does not
address these affirmative defenses.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. A government actor's deliberate indifference to another person's well-being may violate the Eighth Amendment if the government actor has a custodial relationship with the person in question or the government actor's conduct shocks the conscience. *See White v. Lemacks*, 183 F.3d 1253, 1257–58 (11th Cir. 1999). To support her Eighth Amendment claim, Ms. Whatley analogizes her situation to that of a prisoner held in government custody, arguing that DHR required her to admit a state-authorized counselor, Mr. Chapman, into her home or risk losing custody of her child.

A series of government decisions brought Mr. Chapman into Ms. Whatley's home. *See Wyke v. Polk Cty. Sch. Bd.*, 129 F.3d 560, 567 (11th Cir. 1997). DHR instructed Ms. Whatley to undergo counseling. DHR authorized Mr. Chapman to provide counseling, and DHR selected Mr. Chapman from the list of approved providers to counsel Ms. Whatley. Thus, the violence in this case was not the result of purely private actions. *Cf. DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 198–201 (1989). For purposes of the defendants' summary judgement motions, the Court assumes, without deciding, that Ms. Whatley has

presented a colorable analogy and that DHR, by requiring Ms. Whatley to allow Mr. Chapman into her home, deprived her of her liberty in such a way that it assumed some responsibility for her safety.[3]

In cases of physical confinement, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The plaintiff must show that the state actor was aware of and disregarded a substantial risk of serious harm to the plaintiff that ultimately caused the plaintiff's injury. *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).

Ms. Whatley has not shown that the defendants were aware of or disregarded a substantial risk that Mr. Chapman posed to those he counseled. The defendants concede that Mr. Chapman was not qualified under the standards provided by Medicaid, but it does not follow that the defendants necessarily were aware of the risk that Mr. Chapman posed. The materials that Mr. Chapman submitted in support of his application indicated that he was a licensed counselor who held an advanced degree in "Christian Counseling Psychology." (Doc. 105-2, pp. 35–36, 38–41). Mr. Chapman submitted a letter of reference from a then current JCDHR

---

[3] Although the Court entertains Ms. Whatley's argument for purposes of this motion, the Court recognizes that compulsory counseling does not constrain an individual's liberty to the same extent or in same manner as incarceration, which is the paradigmatic example of a custodial relationship for Eighth Amendment purposes. *See Wyke*, 129 F.3d at 569. The parties have not given much attention to this issue, and the Court does not have to decide the issue to resolve Ms. Whatley's § 1983 claims.

social worker who spoke in glowing terms of Mr. Chapman's commitment to those he counseled. (Doc. 105-2, p. 69). A letter from UAB Health System indicated that Mr. Chapman was a Chaplain Resident at UAB Hospital, that "the contents of his application were thoroughly screened by [UAB's] Human Resources Department for accuracy," and that Mr. Chapman met the hospital's requirements for hire. (Doc. 108-5, p. 42; *see also* Doc. 105-2, p. 64). Given this information, Ms. Chambliss and Ms. King may have been negligent in failing to investigate Mr. Chapman's credentials more thoroughly and in failing to recognize that Mr. Chapman did not meet Medicaid's minimum qualifications, but the evidence does not suggest a level of culpability beyond negligence.

In addition, Ms. Whatley has not submitted evidence indicating that the defendants should have discovered or should have been aware of misconduct by Mr. Chapman prior to his abuse of Ms. Whatley. In her response to the defendants' motions, Ms. Whatley points out that Mr. Chapman sexually assaulted another individual whom he counseled through JCDHR. (Doc. 110, p. 6, n. 6). The records from Mr. Chapman's criminal prosecution indicate that the case arising from his abuse of Ms. Whatley was consolidated with a later-filed case. (Doc. 108-6, pp. 6). Mr. Chapman pleaded guilty to sexual misconduct in both cases. (Doc. 108-6, p. 6). Terry Beasley, Human Service Program Manager for JCDHR, testified that she was not aware of misconduct by Mr. Chapman until Ms.

Whatley came forward. (Doc. 110-4, p. 37). Later, Ms. Beasley became aware of allegations made by another woman whom Mr. Chapman had counseled. (Doc. 110-4, p. 37). The evidence in the record does not indicate when this other instance of abuse occurred. More importantly, the evidence does not indicate that the defendants here were aware of or should have been aware of allegations of misconduct against Mr. Chapman before Ms. Whatley came forward. Ms. Whatley may not maintain an Eighth Amendment claim against Ms. Chambliss or Ms. King based only on a negligence theory. *See Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003). Because Ms. Whatley has not offered evidence that either defendant was deliberately indifferent to her well-being, her Eighth Amendment claim fails as a matter of law.

Ms. Whatley's § 1983 claim based on the Fourteenth Amendment fares no better. "[G]overnment officials violate the substantive due process rights of a person not in custody only by conduct 'that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *White v. Lemacks*, 183 F.3d 1253, 1258 (11th Cir. 1999) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)); *see also Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). Whether a defendant's culpable conduct surmounts this high bar is a context-specific inquiry, but the Eleventh Circuit advises that "[c]onduct intended to injure in some way that is unjustifiable by any

government interest is the sort of official action most likely to rise to the conscience-shocking level." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013).

Ms. Whatley asserts that the defendants' failure to properly assess Mr. Chapman's qualifications was sufficiently conscience shocking to be characterized as an Eighth Amendment violation. The evidence adduced by Ms. Whatley shows that the defendants breached a duty to follow mandatory criteria for certifying service providers, but the evidence does not show that they did so intentionally or even recklessly. In this regard, Ms. Whatley's claim is "analogous to a fairly typical state-law tort claim." *Collins*, 503 U.S. at 128. The Supreme Court has cautioned that "the Fourteenth Amendment is not a font of tort law," and "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Sacramento Cty. v. Lewis*, 523 U.S. 833, 848 (1998). "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849; *see also Bendiburg v. Dempsey*, 909 F.2d 463, 470 (11th Cir. 1990).

For Ms. Whatley, the consequences of Ms. Chambliss's and Ms. King's failure to recognize that Mr. Chapman was unqualified were severe and shocking. But the defendants' improper authorization of Mr. Chapman was not shocking in

the constitutional sense. There is no evidence that an improper intention motivated the defendants' concededly improper decision to approve Mr. Chapman, and the defendants' conduct was not reckless, given the letters of recommendation that the defendants received from UAB and from another qualified DHR social worker. Therefore, Ms. Whatley's substantive due process claims fail as a matter of law.

Because Ms. Whatley has not adequately supported her § 1983 claim for deliberate indifference under the Eighth Amendment or her § 1983 claim for violation of her rights under the Fourteenth Amendment, the Court grants the defendants' motions with respect to these claims.

### b. Ms. Whatley's State Law Claims

Ms. Whatley asserts claims for outrage, assault and battery, negligence, and wantoness against the defendants under Alabama law. The defendants contend that Ms. Whatley's state law claims are barred by Alabama's two year statute of limitations. The defendants also contend that they are entitled to state-agent immunity from these claims. As with Ms. Whatley's § 1983 claims, the record before the Court indicates that Ms. Whatley's state law claims suffer from more basic defects. Thus, the Court does not address these defenses.

### 1. Outrage Claim

Ms. Whatley brings a claim of outrage under Alabama law against both defendants.[4] To establish a claim for outrage, a plaintiff must show that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, --- So. 3d ---, 2017 WL 6397654, at *2 (Ala. Dec. 15, 2017) (citing *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990)). To recover for outrage, a plaintiff must show that the defendant's conduct was "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized society." *Green Tree*, 565 So. 2d at 44. Although the Alabama Supreme Court has recognized the tort of outrage only in limited circumstances, Mr. Chapman's conduct surely qualifies as outrageous.

To resolve the pending motions, the Court must assess the conduct of the remaining defendants, not the conduct of Mr. Chapman. As noted above, there is no evidence indicating that either Ms. Chambliss or Ms. King intended to cause harm when they entered into a vendor agreement with Mr. Chapman and placed his counselling company on DHR's authorized provider list. The evidence also does

---

[4] In her second amended complaint, Ms. Whatley pleads claims for intentional infliction of emotional distress and outrage in separate counts. Under Alabama law, these causes of action are one and the same. *See Ex Parte Bole*, 103 So. 3d 40, 52 (Ala. 2012).

not suggest that the defendants were reckless when they made these decisions. There is no evidence in the record suggesting that Mr. Chapman had committed prior acts of abuse when he applied to DHR in 2005. The defendants could not have predicted that Mr. Chapman would abuse a patient when there was no information from which the defendants could have inferred that Mr. Chapman was disposed towards such behavior.

On paper, though Mr. Chapman's qualifications were deficient under DHR policy, he was not so obviously unqualified that it was reckless for the defendants not to investigate his credentials. Therefore, the Court grants the defendants' motions with respect to this claim.

### 2.  Assault and Battery

Ms. Whatley asserts that Ms. Chambliss's and Ms. King's decision to approve Mr. Chapman proximately caused the sexual abuse that she suffered at the hands of Mr. Chapman. (Doc. 83, ¶ 34). It is undisputed that Mr. Chapman physically abused Ms. Whatley, but the remaining defendants can be held vicariously liable for Mr. Chapman's acts only if those acts can be attributed to them under a theory of *respondeat superior*.

"To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of employer and employee—

master and servant." *Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006) (quoting *Hendley v. Springhill Mem'l Hosp.*, 575 So. 2d 547, 550 (Ala. 1990)). To determine whether the requisite relationship exists, a court must assess the degree of control that the putative employer has over the putative employee. *Ware*, 954 So. 2d at 549. The degree of control is dispositive when the question before a court is whether the individual in question is an employee rather than an independent contractor. *Id.*

Here, there is no evidence that either Ms. Chambliss or Ms. King personally exercised control over Mr. Chapman. The evidence indicates that Mr. Chapman was an independent contractor for DHR. Mr. Chapman operated his own business and worked for DHR on the basis of a vendor agreement. Therefore, the defendants were not Mr. Chapman's employer, and his tortious abuse of Ms. Whatley cannot be attributed to them. Consequently, Ms. Whatley's claims for assault and battery against Ms. Chambliss and Ms. King fail, and the Court grants the defendants' motions with respect to these claims.

### 3. Negligence Claim

As discussed above, the defendants' conduct most nearly resembles a form of negligence, which Ms. Whatley pleads in the fifth count of her amended complaint. (Doc. 83, p. 15). To recover for negligence under Alabama law, Ms. Whatley must demonstrate that the defendants owed her a duty, the defendants

breached their duty, and the defendants' breach caused her injury. *See Prill v. Marone*, 23 So. 3d 1, 6 (Ala. 2009). By virtue of their positions within JCDHR, the defendants had a duty to ensure that all DHR-approved service providers met the minimum qualifications set by Medicaid. This duty exists, at least in part, for the benefit and protection of individuals served by DHR like Ms. Whatley. The defendants breached their duty when they approved Mr. Chapman's application without sufficient vetting.

But Ms. Whatley's claim against Ms. Chambliss and Ms. King falters on the causation element. "Liability will be imposed only when negligence is the proximate cause of injury; injury must be a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury." *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976). "If the injury results from an independent intervening, efficient cause, not reasonably foreseeable, the original negligent act or omission is not the proximate cause of injury." *Id.* The criminal acts of a third party can break the causal chain between the defendant's negligence and the plaintiff's injury if the intervening criminal act was not reasonably foreseeable. *Id.* at 1340. Mr. Chapman's criminal acts were the immediate cause of Ms. Whatley's injury.

In Alabama, the general rule is that "absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third

person." *Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986). To hold a defendant liable under the special circumstances exception, the plaintiff must show that "(1) that the '*particular* criminal conduct [was] foreseeable;' (2) that 'the defendant ... possessed "specialized knowledge" of the criminal activity;' and (3) that 'the criminal conduct [was] a probability.'" *Ex Parte S. Baldwin Reg. Med. Center*, 785 So. 2d 368, 370 (Ala. 2000) (quoting *Carroll v. Shoney's, Inc.*, 775 So. 2d 753 (Ala. 2000) (emphasis in *S. Baldwin*)). Here, Mr. Chapman's background did not suggest that he had criminal tendencies, let alone a propensity to commit sexual abuse. Therefore, Mr. Chapman's abuse of Ms. Whatley was not reasonably foreseeable to either defendant.

Ms. Whatley also cannot hold the defendants liable on a theory that she had a special relationship with the defendants through DHR. A special relationship sufficient to come within the exception may exist when a plaintiff is uniquely dependent on a defendant for protection. *See Saccuzzo v. Krystal Co.*, 646 So. 2d 595, 597 (Ala. 1994); *Finley v. Patterson*, 705 So. 2d 826, 828 (Ala. 1997). Notably, the Alabama cases that recognize the special relationship exception also entail some discussion of foreseeability, albeit in a more generalized sense than in the special circumstances context.

In *Young v. Huntsville Hospital*, the Alabama Supreme Court determined that the defendant hospital had a special relationship with a heavily sedated patient

such that the hospital could be held liable for the criminal conduct of a trespasser who molested the patient. 595 So. 2d 1386. The Alabama Supreme Court based the finding of a special relationship on the plaintiff's uniquely vulnerable state, but the Court also noted that the person responsible for the assault previously had trespassed in the hospital, and thus "the risk was most likely reasonably foreseeable because the resulting crime was one the general risk of which was foreseeable." *Young*, 595 So. 2d at 1389 (internal quotations omitted).

Similarly, in *Thetford v. City of Clanton*, the Alabama Supreme Court found that the relationship between innkeeper and guest imposed a duty on an innkeeper to protect a particular guest, a battered wife, who had informed the innkeeper that she was hiding from her abusive husband. 605 So. 2d 835, 838–40 (Ala. 1992). Although the Alabama Supreme Court discussed this case in terms of the relationship between the parties, the Court noted that "a jury may conclude that the fatal beating, seven hours later, was part of an unbroken chain of events, and, therefore, not an intervening act that would exempt the hotel defendants from liability." *Thetford*, 605 So. 2d at 840. These cases illustrate that foreseeability factors into the determination of whether a plaintiff can establish the special relationship exception. As noted above, Ms. Whatley has not produced evidence indicating that Mr. Chapman's abuse was foreseeable to Ms. Chambliss or Ms. King.

Where foreseeability is lacking, even the most vulnerable plaintiffs have been unsuccessful under Alabama law in holding a defendant liable for a third party's criminal act. *Ex parte South Baldwin Regional Medical Center* illustrates the point. 785 So. 2d 368 (Ala. 2000). *Baldwin* involved a claim by the parents of a minor who was molested by a nurse while in the care of the defendant hospital. The Alabama Supreme Court rejected the parents' attempt to hold the hospital liable for the nurse's conduct through the special relationship exception. Despite the minor's vulnerability, the Alabama Supreme Court determined that the minor was not uniquely dependent on the hospital because other family members were in the room at the time of the molestation. *S. Baldwin*, 785 So. 2d at 371. The plaintiffs provided no evidence that suggested that the nurse's misconduct was foreseeable.

Here, Ms. Whatley was vulnerable to Mr. Chapman. DHR placed her in that position. But as discussed, neither Ms. Chambliss nor Ms. King, had reason to believe that they were putting Ms. Whatley at risk when they sent Mr. Chapman to Ms. Whatley's home. Because the Alabama Supreme Court has declined to recognize a special relationship based solely on a plaintiff's vulnerability, Ms. Whatley's negligence claim fails for absence of evidence of foreseeability. *See S. Baldwin*, 785 So. 2d 368; *see also Hargrove v. Tree of Life Christian Day Care*

*Center*, 699 So. 2d 1242 (Ala. 1997). The Court grants the defendants' motion with respect to this claim.

### 4. Wantonness Claim

Ms. Whatley's final state law claim is for wantonness. As with the preceding claims, Ms. Whatley bases this claim on the defendants' decision to authorize Mr. Chapman to provide counseling on behalf of DHR. But the defendants' actions fall short of the culpability necessary to sustain a claim of wantonness.

To prevail on a wantonness claim, a plaintiff must show that the defendant acted "'with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.'" *Central Ala. Elec. Co-op. v. Tapley*, 546 So. 2d 371, 379 (Ala. 1989) (quoting *Stickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145–46 (Ala. 1987)). The defendants did not have a reason to suspect that Mr. Chapman posed a danger to others, and they would not have been conscious of the fact that they were putting others in danger by listing him as an approved service provider. Therefore, the Court grants the defendants' motion with respect to this claim.

## IV. CONCLUSION

For the reasons explained above, the Court grants the defendants' motions and enters judgment in their favor on Ms. Whatley's claims. The Court denies as moot Ms. Whatley's partial motion for summary judgment. The Court will enter a separate order closing this case.

**DONE** and **ORDERED** this August 10, 2018.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE